|¶ COOKS, Judge.
Thomas Mier was traveling on East Main Street in New Iberia, Louisiana at the time his pick-up truck was hit by a vehicle operated by Dr. Robert Martin. Martin alleged Mier was operating his vehicle at night without lights; and thus, he should share fault for causing the accident. The trial court disagreed, allocating 100% fault to Martin. This appeal followed.
FACTS
On October 5,1996, Thomas Mier was traveling west on East Main Street. Simultaneously, Dr. Robert Martin was traveling north on Haik Memorial Drive at its intersection with East Main Street. The intersection is controlled by a stop sign facing traffic on Haik Memorial. Martin claimed he stopped at the sign, then proceeded with caution. As he crossed East Main, intending to enter Iberia General Hospital’s parking lot, his vehicle struck the side of Mier’s pick-up truck.
Dr. Martin was not injured, but Mier was taken by ambulance to a hospital in |2New Iberia for emergency care.[1] Thereafter, he sought treatment for back and shoulder pain. All tests were within normal limits, except his physicians noted he had tenderness in his back and shoulder. They prescribed over-the-counter medications for pain and concluded Mier probably sustained a soft tissue injury, which they expected to heal ip about six months.
To dispute Mier’s medical claim, Martin attempted to introduce a surveillance tape of Mier’s physical activity after the accident. Supposedly, the video tape contained footage of Mier from December 3, 1996 through February 12, 1997 “getting around” normally, without evidence of any injury. Mier objected to the video asserting Martin failed to produce it timely pursuant to discovery requests. The trial court agreed and refused to admit it.
At the close of trial, the judge concluded the evidence and testimony favored Mier. In his written reasons for judgment, the judge assessed 100% fault to Martin, awarding Mier $15,000.00 for general damages, $6,550.00 for lost wages, and medical expenses in the amount of $11,731.36.
Dr. Martin contends the trial court erred in assessing him with 100% fault for causing the accident. Martin also disputes the trial court’s medical and past wage awards on grounds of excessiveness and he insists the trial court inappropriately included finance charges in its calculation of damages. Finally, he assigns error to the trial court’s refusal to admit the surveillance tape as evidence.
It is well settled that an appellate court owes deference to a trial court’s findings. Absent manifest error on the part of the trial court, the reviewing court shall not set aside its findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). We have [3carefully considered the issues presented before us and affirm the trial court’s judgment, except that portion awarding finance charges as an element of damages.
ALLOCATION OF FAULT
The record reflects this accident occurred just prior'to 7:00 p.m. On cross examination, Martin testified if the accident had not occurred, he would have had enough time to get to the hospital, park his car, and begin work for 7:00 p.m. Theresa Dugas, another driver on the road that night, testified Mier was operating his vehicle without its headlights turned on. She also testified Mier was in the right lane at the time of the crash. However, both Martin and Mier testified Mier was in the left lane. Dugas also claimed it was *961 raining very hard at the time of the accident. Yet Martin, Mier and the accident report indicated the road was dry. Even more stunning, Dugas testified although it was raining very hard, her passenger window was down and she heard another driver on the side of Mier’s vehicle shouting to him “turn your lights on.” Mier testified his headlights were illuminated at the time of the accident.
Martin claimed he never saw Mier’s white truck until he hit it. But, Mier’s truck was green. Martin at one point testified Mier’s lights were off, but he must have turned them on immediately after the accident. On cross-examination, Martin admitted he did not actually see Mier turn the lights on, “he just knew they came on.” Martin, however, never reported his observations to the policeman who investigated the scene.
In Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), our State Supreme Court instructed:
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Specifically, when a trial court’s findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be |4aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s- understanding and belief in what is said.
Since there are two permissible views of the accident, we find the trial judge was not manifestly erroneous in accepting Mier’s version of the accident and finding Martin 100% at fault.
MEDICAL SPECIAL DAMAGES
Mier was awarded special damages for medicals in the amount of $11,731.36. Martin asserts this award was excessive, alleging it was not supported by sufficient proof. Specifically, Martin contests the trial court’s award of $1,305.00 in past medical expenses for treatment Mier alleges he received at the Lisenby Chiropractic Clinic. He argues the trial court erred by compensating Mier for simply presenting medical bills to the court. We disagree.
The authenticity of the bills from Lisenby Chiropractic Clinic was stipulated to by the parties. The bills indicate Mier received treatment for neck pain between January 7,1997 and March 19,1997. When a plaintiff alleges he has incurred medical expenses as a result of an accident, and that allegation is supported by a bill, jurisprudence permits the bill to be included in the judgment, absent contrary proof. Este’ v. State Farm Insurance Companies, 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850. The record does not contain any contrary proof tending to show Mier’s treatments were either not connected to the injury he sustained during the accident or his care was not medically necessary. Without such proof, we lack authority to find the trial court’s assessment was excessive.
FINANCE CHARGES
The medical award also included $958.53 in finance charges for services rendered by Dr. Heard and the St. Thomas Clinic. Martin argues awarding finance charges permits recovery of a second layer of interest not authorized by law. We agree.
 It is well settled that “allowing recovery of this finance charge would amount to interest upon interest, a concept not favored by our law.” Marshall v. A & P Food Co. of Tallulah, 587 So.2d 103, 111 (La.App. 2 Cir.1991). Legal interest, which is added to all tort judgments by law, may not be added to or compounded with any amount which is itself an interest payment. La. Civ. Code art. 2000.
*962 Mier argues, however, he incurred the claimed finance charges because he could not afford to pay the medical bills, forcing him to “borrow” the money from Dr. Heard and St. Thomas Clinic. Thus, he argues La.Civ.Code art.2000 does not bar the payment of interest which is paid for the “use of money.”
Mier relies on the holding in Unity Plan Finance Co., Inc. v. Green, 179 La. 1070, 155 So. 900 (1934). However, the factual circumstances in Green differ from the case at hand. In Green, Unity Plan Finance Company instituted suit against Green for payment of three promissory notes. The parties agreed if the debtor defaulted on any installment, the note bearing a rate of interest higher than that statutorily authorized was collectible at the creditor’s option. Green involves the payment of conventional interest arising by virtue of a contractual agreement between parties. In this case, the parties did not contract. Absent a contractual agreement, our law contemplates the imposition of legal, not conventional interest on sums which are the object of a judicial demand. La.Civ.Code art. 2000.
We note the court’s holding in Marshall, 587 So.2d 103. In that case, plaintiff slipped and fell in an A & P Grocery Store, sustaining $3,000 in medical costs. The medical bill included $355.74, representing a 2% service charge. The court held A & P Grocery was not responsible for the added charge because such payment would amount to “interest upon interest.”
PAST LOST WAGES
Martin also assigns error in the trial court’s award for lost wages. It is well-established that the trial court has discretion to assess monetary damages, and such awards should not be disturbed absent a clear showing of its abuse. Id. The trial judge awarded Mier $6,550.00 in lost wages over a six month period.
Past lost wages are mathematically calculated from proof offered at trial. Plaintiff must show his loss of income and the length of time he missed work. ANMAC Foundation, Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951 (La.App. 2 Cir.1992). Proof may consist of plaintiffs own testimony, but if it is unsupported by other evidence, the courts may regard it as highly speculative. Rhodes v. State, Through Dep’t of Trans. and Dev., 94-1758 (LaApp. 1 Cir. 5/5/95); 656 So.2d 650, vacated in part on other grounds, 95-1848 (La.5/21/96); 674 So.2d 239.
Dr. Heard and Dr. Garr testified Mier suffered from a soft tissue injury of the lower back and left shoulder blade. They confirmed the pain caused by such injury required that Mier refrain from engaging in strenuous activity for approximately six months. Mier has not returned to work since the date of the accident. He testified he earned $7.00 an hour, 40 hours a week which equals $280.00. Based on the testimony of Mier, Dr. Heard and Dr. Garr, Mier could not work for six months.[2] This amount multiplied by his weekly wages totals $6,720.00. The trial court awarded him $6,550.00 for lost wages. The amount was not excessive.
SURVEILLANCE TAPES
The importance of surveillance tapes in personal injury cases has been well recognized by the court’s of this state. Undoubtedly, video tapes can be highly significant in measuring a plaintiffs credibility. Wolford v. JoEllen Smith Psychiatric, Hospital, 96-2460 (La. 5/20/97); 693 So.2d 1164. It is significant to note, however, their admission into evidence is *963 largely within the trial court’s discretion. Olivier v. LeJeune, 95-0053 (La.2/28/96); 668 So.2d 347.
The trial court refused to admit a second video tape offered by Martin as evidence. In April of 1998, Mier filed a request for Production of Documents and Things, seeking among other items, all video tapes. Martin complied by disclosing only one video surveillance tape. His attorney claimed he “forgot” to send the second tape. The courts have said discovery is a fundamental component of the trial process. We cannot say the trial court abused its discretion in finding the tape was tendered too late and admitting it would unfairly disadvantage the plaintiff who sought timely discovery in advance of trial.
CONCLUSION
For the aforementioned reasons, we affirm the trial court’s judgment except his award of finance charges to Mier. Accordingly, we amend the judgment to delete the amount awarded for finance charges; in all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.

. No evidence was ever presented at trial regarding the findings of the emergency room examiners or any treatment which may have been tendered. However, after the emergency room visit, Mier was examined by three other physicians who testified regarding Mier's medical condition following the accident.

. Mier's inability to handle present employment is not accident related. He has a long history of psychiatric problems that prevent him from functioning normally in work environments. He testified that prior to the accident, he was employed at Teche Electrical supply as a clerk filling orders for customers. However, after being excused from work for six months because of the accident related injuries, he began to suffer from chronic depression. He is still unable to work.